Charles J. Jenkins and Anna V. Jenkins v. Commissioner.
Jenkins v. Commissioner
Docket No. 5096-64.
United States Tax Court
T.C. Memo 1967-257; 1967 Tax Ct. Memo LEXIS 5; 26 T.C.M. (CCH) 1328; T.C.M. (RIA) 67257; December 27, 1967
*5 Held: Per diem and mileage allowances received by petitioner Charles J. Jenkins while performing services for the Brotherhood of Railroad Trainmen are includable in gross income. Held, further: Petitioner's home for deductibility of expenses while traveling away from home purposes was Springfield, Illinois, since this was the location of his substantial and indefinite employment. Allowable deductions from the per diem and mileage allowances determined. Held, further: No part of the underpayment was attributable to negligence or intentional disregard of the rules and regulations within the meaning of secton 6653(a). Roy W. Bergmann, for the petitioners. Michael J. Christianson, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in the joint income taxes of petitioners and additions to the tax for negligence under section 6653(a) [1] as follows: Section 6653(a)
Year
Deficiency
Addition
1958
$2,005.60
$100.28
1959
1,560.44
78.02
1960
2,081.01
104.05
The following issues remain for our decision: (1) Whether per diem living and automobile mileage allowances must be included in gross income for the taxable years in question and, if so, whether deductions for all or any part of such per diem or reimbursements should be allowed as traveling expenses incurred away from home within the meaning of section 162(a)(2). (2) Whether the underpayment of income tax was attributable to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Findings *7 of Fact Some of the facts have been stipulated and are found accordingly and adopted as our findings. Petitioners, Charles J. Jenkins and Anna V. Jenkins, are husband and wife and their legal residence at the time the petition was filed herein was St. Louis, Missouri. Their joint returns for the years involved were filed with the district director of internal revenue, St. Louis, Missouri. Anna is a party herein only by reason of having filed joint returns with her husband, Charles J. Jenkins, and the latter will hereinafter be referred to as petitioner. Petitioner was employed by the Terminal Railroad Association of St. Louis as a switchman during the years 1920 to 1936. The Terminal Railroad Association is a railroad which operates in the States of Missouri and Illinois. Its headquarters are located in St. Louis. Petitioner worked as a switchman in the Bremen Avenue yeard in St. Louis. Petitioner was a member of a labor union, the Brotherhood of Railroad Trainmen, hereinafter called Brotherhood, which represents switchmen, switch tenders, yards masters, flagmen, brakemen, conductors, baggagemen, and mail handlers. The Brotherhood's home office is located at Cleveland, Ohio, *8 and it operates through various local lodges throughout the United States. Some time in 1936 petitioner became the Brotherhood's general chairman for the Terminal Railroad Association in the St. Louis area. Petitioner held this position through January 31, 1955. During the time he worked for the Brotherhood petitioner had leave of absence from the Terminal Railroad Association which preserved his seniority rights as switchman in the Bremen Avenue yard in St. Louis. The principal duty of a general chairman is to handle grievances and other union matters with a particular railroad. The Brotherhood usually has a general chairman for each railroad. In 1954 petitioner was not re-elected to the position of general chairman. From February 1, 1955, through December 31, 1960, petitioner served the Brotherhood as deputy president, organizer or representative. Deputy presidents assist general chairmen and general grievance committees in resolving labor disputes with railroads. An organizer's principal activity is combating rival unions and a representative performs miscellaneous union work. During the period involved the Brotherhood had several rival unions. The foregoing Brotherhood positions *9 were held on an appointment basis, and the appointments were made by the president of the Brotherhood. Appointments were evidenced by written commissions signed by the Brotherhood's president. Commissions were generally issued for periods of 30 days or less. The actual work assignments were separately communicated, generally in writing, and no completion date would be given. It was impossible to predict the length of time that would be required to complete the particular work assignment. Periodic renewal of commissions was essential to petitioner's continued employment by the Brotherhood, but the record evidence does not disclose the renewal of commissions regularly throughout the years involved. The president of the Brotherhood and petitioner were close personal friends and this contributed to the number of commissions received by petitioner despite the objections of other officers and members on the administrative staff of the Brotherhood. Petitioner usually remained on a work assignment until it was finished or until another assignment from the president was received. There were occasional breaks in petitioner's receipt of commissions during the years in question, but they were *10 infrequent and of short duration. During the years 1955 to 1960, petitioner worked almost exclusively on assignments involving the Chicago and Illinois Midland Railway Company and the Peoria and Pekin Union Railway. The former has its headquarters at Springfield, Illinois, and the latter is based at Peoria, Illinois. When petitioner performed services under commissions for the Brotherhood away from St. Louis, he was paid wages, a per diem allowance and a travel allowance for the use of his automobile. He also was entitled to per diem on days departing from or arriving back in St. Louis. During the years 1958, 1959, and 1960 petitioner submitted semimonthly salary and expense statements to the Brotherhood showing per diem allowance, automobile mileage allowance, and any other reimbursable expenses such as telephone and telegraph costs. The per diem allowance was $15 for 1958, 1959, and January of 1960. The per diem allowance was $20 for the balance of 1960. Petitioner received per diem allowances in the amounts of $4,560 for 1958, $3,945 for 1959, and $5,735 for 1960. The mileage allowance was 9 cents per mile during 1958, 1959, and January of 1960. The mileage allowance for the balance *11 of 1960 was 12 cents per mile. Petitioner received mileage allowances in the amounts of $2,820.67 for 1958, $2,158.47 for 1959, and $1,822.89 for 1960. The following table shows where and for how long petitioner lodged during the period February 1, 1955, to December 31, 1960: Number of Days
Place of Lodging
1955
1956
1957
1958
1959
1960
Springfield, Illinois
241
305
236
238
227
241
Peoria, Illinois
73
48
123
39
2
2
St. Louis, Missouri
10
13
6
88
120
121
Other locations
10
16
2
334
366
365
365
365
366
Petitioner owned a house in St. Louis during the years in question, the property having been purchased 18 years earlier. Petitioner married Anna V. Jenkins in 1957 or 1958. St. Louis was his home city for purposes of determining his per diem allowance under applicable rules of the Brotherhood. Petitioner received the following amounts of per diem at the locations indicated: Per Diem
Place of Lodging
1958
1959
1960
Springfield, Illinois
$3,570
$3,405
$4,715
Peoria, Illinois
585
30
40
St. Louis, Missouri [1]
405
270
940
Other locations
240
40
$4,560
$3,945
$5,735
*12 Petitioner computed his total mileage for reimbursement purposes by recording his speedometer's mileage reading in the morning and at the close of the day. When petitioner prepared his semimonthly expense report, he recorded the total mileage for the period and deducted his estimated personal mileage to compute the claimed business mileage. Petitioner used his automobile for business travel and for nonbusiness purposes, including travel to St. Louis on weekends and holidays, travel to church and medical appointments and commuting travel. When a claim for business mileage was questioned by the Brotherhood, it was the policy of the Brotherhood to inform the deputy president of the questioned mileage and at the same time reimburse the deputy president for the unquestioned mileage. The deputy president would subsequently be reimbursed for the questioned mileage if the number and purpose of the questioned miles were adequately substantiated. In August of 1960 the Brotherhood questioned *13 the mileage claimed by petitioner on his expense report for the period beginning August 1 and ending August 15. Business mileage claimed that one-half month was 970 miles of a total of 1,080 miles run, and petitioner failed to substantiate the mileage as necessary business travel. No effort was made thereafter to substantiate the mileage because petitioner had lost his records for that month. However, for the remaining months of 1960 petitioner's average personal mileage for a month was 835 as compared with an average monthly personal mileage figure of 132 for the first seven months of 1960. Petitioner worked on few, if any, assignments in St. Louis during the period 1955 to 1960. Petitioner did, however, make numerous personal trips from Springfield, Illinois, to St. Louis on weekends, holidays, and vacations, as set forth in the following table: 1958
1959
1960
Number of round trips
between Springfield
and St. Louis
22
38
48
Round trip mileage
204
204
204
Total mileage
4,488
7,752
9,792
Reimbursement value
at 9" per mile
$403.92
$697.68
$ 91.80
at 12" per mile
1,052.64
$403.92
$697.68
$1,144.44
On their joint Federal income *14 tax returns for 1958, 1959, and 1960, petitioner and his wife did not include the per diem living allowance or the automobile mileage allowance in gross income. They understood that under Rev. Rul. 58-453 and on the basis of advice from the Brotherhood that these items were not to be so reported. In answer to the question "Did you receive an expense allowance or reimbursement, or charge expenses to your employer?" which appeared on the Federal income tax returns involved, the box opposite "No" was checked in 1959 and 1960; no answer was given in 1958. In the notice of deficiency respondent determined that the per diem living allowances and auto expense reimbursements received from the Brotherhood in 1958, 1959, and 1960 were includable in petitioner's gross income. Respondent also added a 5 percent penalty to the tax deficiency as authorized by section 6653(a) for negligence or intentional disregard of the rules and regulations. The parties have agreed that there is no statute of limitations question in the case. At trial respondent waived substantiation of food and lodging expenses in the amount of $15 for nights petitioner spent away from St. Louis during the period *15 January 1, 1958, through January 31, 1960. However, respondent did not waive substantiation of food and lodging expense for the balance of 1960 and put petitioner to his proof that he actually spent $20 per day for food and lodging for any given day during the period February 1, 1960, through December 31, 1960, if it is held that St. Louis was his tax home and petitioner is entitled to deduct away from home travel expenses. Ultimate Findings of Fact Charles J. Jenkins' principal place of employment during 1958, 1959, and 1960 was Springfield, Illinois, and his employment there was indefinite and indeterminate and not temporary. Expenditures for living expenses in Springfield and travel expenses between that place and St. Louis were nondeductible personal expenses. Petitioner's underpayments for the years in issue were not due to negligence or intentional disregard of the rules and regulations. Opinion Petitioner's initial contention is that the amounts received by him as per diem and mileage allowances during 1958, 1959, and 1960 are not includable in gross income under section 61 of the Code. The asserted support for this argument is Revenue Ruling 58-453, 1958-2 C.B. 67, *16 which provides that an employee who pays ordinary and necessary business expenses for travel (including meals and lodging) and transportation, for which he is paid a fixed mileage allowance or a per diem allowance at rates not in excess of a specified rate schedule, will be deemed to have been required to account to his employer for such expenses for purposes of section 1.162-17(b) of the Income Tax Regulations and need not include the payments in income. The per diem and mileage allowances received by petitioner fall within the scope of the foregoing Revenue Ruling, but the importance of such qualification is only that the reporting requirements of section 1.162-17 (b) of the Income Tax Regulations are applicable to petitioner. It is there stated that the "employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer." [2]
*17 This regulation is issued by the Commissioner under section 162 of the Code which provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid during the taxable year in carrying on a trade or business including traveling expenses while away from home in the pursuit of a trade or business. The same argument was made unsuccessfully in Leo C. Cockrell, 38 T.C. 470, 478 (1962), affd. 321 F. 2d 504 (C.A. 8, 1963). We stated in that case that the argument "shows a misconstruction of the basic issue here involved since this revenue ruling, as well as the regulation to which reference is made therein, deals with travel expenses which constitute deductions under section 162(a)(2), and in no way determines what are travel expenses under this provision [section 61] of the Internal Revenue Code." [Emphasis added.] The same observation applies here where we are also initially concerned with inclusion of income under section 61 and not deduction of away from home travel expenses under section 162. It is clear that per diem and mileage allowances generally constitute gross income but need not be reported *18 as such when they are actually reimbursed travel expenses and there is no question about their deductible nature. However, the present controversy arises due to respondent's position that the per diem and mileage allowances received by petitioner were not "away from home" travel expenses and had no relationship to deductible business traveling expenses. In order for traveling expenses (including meals and lodging) to be deductible they must be reasonable and necessary and be incurred while away from home in the pursuit of a trade or business. Sec. 162(a)(2); Commissioner v. Flowers, 326 U.S. 465 (1946). Petitioner insists that his "home" for tax purposes was St. Louis during the years involved. Respondent contends that petitioner's tax "home" was Springfield, Illinois, and that petitioner was not "away from home" with respect to the deductibility of traveling expenses while he resided and was employed in Springfield, Illinois, during the years in question. It is further contended that petitioner was not away from home in pursuit of a trade or business while on trips for personal purposes to St. Louis, Missouri. The meaning of the phrase "away from home" in the tax *19 sense has often been litigated, and the guiding principle which has evolved is that one's tax home is determined by the principal place of one's business or employment. If there is a change in duty station then often resolution of the problem must be based upon a factual distinction between temporary employment and in definite or indeterminate employment. Peurifoy v. Commissioner, 358 U.S. 59, 61 (1958), and cases there cited. If after a careful examination of all the facts and circumstances of a particular case it is determined that the taxpayer's employment at the questioned location is temporary, expenditures for travel including food and lodging will qualify as away-from-home expenditures. Not so, however, if it is indefinite or indeterminate. Petitioner's contention that he was away from home for tax purposes while working in Springfield relies on certain objective factors. He always maintained a home in St. Louis and his wife resided there. His employment by the Brotherhood from February 1, 1955, through December 31, 1960, was dependent upon receipt of new commissions every 30 days since they were never issued for longer periods. If a new commission was not received, *20 petitioner's employment by the Brotherhood would terminate, but he would have had seniority rights with respect to his switchman's job in the Bremen Yard at St. Louis. Petitioner's friendliness with the Brotherhood's president was apparently responsible for his receipt of commissions and if a different person became president, future commissions would probably not have been forthcoming. Petitioner was not encouraged to move by the Brotherhood, and petitioner was considered to be in an away-from-home status by the Brotherhood when away from St. Louis. These are petitioner's contentions, some of which lack support in the record, as our findings indicate. The following objective factors are relied upon by respondent to support his position that petitioner's employment in Springfield during 1958, 1959, and 1960 should be characterized as indefinite or indeterminate in nature. Petitioner was never given a work assignment by the Brotherhood in St. Louis during the years 1955 to 1960, inclusive. Petitioner worked and resided in Springfield 241 days in 1955, 305 days in 1956, 236 days in 1957, 238 days in 1958, 227 days in 1959, and 241 days in 1960. It is argued from the preceding figures *21 that Springfield was petitioner's principal place of employment during the specified years. Although petitioner's employment by the Brotherhood may have been dependent on 30-day commissions, the length of the work assignments had no relationship to the 30-day commissions which were routinely issued. The work assignments themselves were indefinite and had no completion date or foreseeable termination date. The evidence of record is inconclusive to establish that there were actually 30-day commissions throughout the entire period here involved. However, throughout the period and for three years prior thereto petitioner was employed by the Brotherhood exclusively and during the years 1955 to 1960, inclusive, such employment was regular and substantially continuous. Although the issue is essentially factual, we are aided by prior cases in analyzing and comparing the relative importance of the various factors relied upon by petitioner and respondent. It is basic to this area of tax law that the location of one's family residence is generally of little, if any, consequence. "Home" as used in section 162 with respect to the deductibility of travel expenses means the employee's principal *22 place of business or employment, not where his heart may still be. Leo C. Cockrell, supra; Robert A. Coerver, 36 T.C. 252 (1961), affirmed per curiam 297 F. 2d 837 (C.A. 3, 1962); Commissioner v. Flowers, supra.The same can be said about the Brotherhood's policy of compensating petitioner when away from St. Louis. The employer's policy of reimbursement has no relationship to deductibility of alleged traveling expenses. Petitioner stresses the importance of the 30-day commissions. However, in resolving the question of temporary versus indefinite employment, consideration has been given to whether the type of employment is such that its termination within a short time could be foreseen. Beatrice H. Albert, 13 T.C. 129 (1949). The actual duration of the questioned employment has also been given consideration. Floyd Garlock, 34 T.C. 611 (1960). The probability of termination was also emphasized in Harvey v. Commissioner, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959), which case petitioner relies on here. The test there suggested is whether there was a reasonable *23 probability known to an employee at the time he was transferred to a new post of duty that he would be employed there for a long period of time. It seems clear to us that certainly by 1958 petitioner should have expected his employment at Springfield to continue for an indefinite period. By this time petitioner had spent the better part of three years on work assignments in Springfield. He has not shown that the prospects of continued employment in Springfield diminished during any of the years in issue, and we believe that petitioner's employment status in Springfield by 1958 can most properly be characterized as indefinite or indeterminate in nature. It certainly, by that time, could not be regarded as temporary. It is quite possible for employment to ripen "into a substantial, indefinite, or indeterminate, rather than a temporary duration." Floyd Garlock, supra at 615. It might be that petitioner's initial employment in Springfield in 1955 was temporary but we doubt that this characterization could remain applicable after three years of service at the same location. There was a reasonable probability known to petitioner in 1958 that he would be primarily employed *24 at Springfield for a relatively long period of time. See also Arthur Sansone, 41 T.C. 277 (1963). The somewhat tenuous nature of petitioner's employment with the Brotherhood is often emphasized but the fact remains that his employment throughout the period was relatively constant and as the record discloses almost continuous. The substantial and actual duration of petitioner's employment in Springfield indicates its indefiniteness. Josette J. F. Verrier Friedman, 37 T.C. 539 (1961). We conclude that his retention and maintenance of his residence in St. Louis was a personal choice not motivated by business reasons, and not connected with his employment in the years at issue. A careful examination of all of the foregoing factors convinces us that petitioner was not away from home for tax purposes while performing services for the Brotherhood in Springfield during the period in question. His principal place of business or employment was Springfield not St. Louis. Therefore, amounts received as per diem while in Springfield constitute taxable income with no allowable deductions therefrom. They were used to pay personal living expenses of petitioner at his *25 principal place of employment. Petitioner also received per diem allowances on the days he traveled back and forth from his work location to his residence in St. Louis. These personal trips occurred principally on weekends, holidays, and vacations. Expenses of meals and lodging on such trips were not incurred in the pursuit of business and accordingly are not deductible under section 162(a)(2). "The job, not the taxpayer's pattern of living, must require the traveling expenses." Robert A. Coerver, 36 T.C. 252 (1961), affirmed per curiam 297 F. 2d 837 (C.A. 3, 1962). However, petitioner did receive per diem allowances during the years in question for food and lodging at locations other than Springfield and St. Louis. The dollar amounts were $585 in 1958, $270 in 1959, and $80 in 1960. These amounts should have been allowed as deductions by respondent in computing the deficiencies here involved since there is no question that these amounts constituted reimbursements for qualifying traveling expenses which were in fact incurred. Respondent also included the mileage allowances received by petitioner from the Brotherhood in his gross income with no deductions *26 therefrom. Petitioner was reimbursed for travel at his work locations and travel between his work locations and his St. Louis residence. Since we have concluded that petitioner's tax home was Springfield, it follows that petitioner underestimated his personal mileage. All of the trips between Springfield and St. Louis constituted travel for personal purposes. Respondent concedes on brief, however, that petitioner did incur some transportation costs in the pursuit of business and that therefore deductions of a portion of the mileage allowances should be allowed. Respondent urges that the Court make an approximation of the allowable transportation expenses under the authority of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). It is also suggested by respondent that the increased amount of average personal mileage estimated by petitioner after his mileage was questioned by the Brotherhood in August of 1960 is probably realistic since there is no indication that the requirements of petitioner's employment had changed in any material way so as to necessitate an alteration in petitioner's travel habits, at least in 1959 and 1960. In 1958 substantially fewer trips to St. *27 Louis were made. We agree with respondent that petitioner's estimate of personal mileage prior to August 1960 was much too low. Making the most reasonable approximation possible upon the evidence before us and under the circumstances, we hold that petitioner received reimbursements for personal mileage in the amount of 400 miles per month during 1958 and 600 miles per month during 1959 and 1960, but prior to August 1960. These figures are arrived at to some extent in the light of the difference between the average personal mileage claimed before August 1960 and the average personal mileage claimed after that date. The amount received as mileage allowances attributable to this personal mileage constitutes additional gross income to petitioner with no corresponding deduction allowable. Thus respondent's determination with respect to the mileage allowances is sustained only to this extent. Respondent has determined that a part of the underpayment involved herein was due to negligence or intentional disregard of rules and regulations and has added the 5-percent penalty under the provisions of section 6653 (a). In support of this determination, respondent contends that petitioner did *28 not maintain sufficient records to allow a correct calculation of his income tax liability. Petitioner's answers on the 1959 and 1960 tax returns that no expense allowance or reimbursement from an employer was received and the failure to answer this question on the 1958 return are also stressed by respondent to support his penalty determination. We believe that the deficiencies in this case are attributable to an honest misconception of the law on the part of petitioner. He understood and believed that his per diem and mileage expenses were not income and should not be reported on his returns; the Brotherhood had a copy of respondent's ruling, Rev. Rul. 58-453, which was distributed to petitioner and other of its officers and employees to guide them in preparing their returns. He considered St. Louis his home and so did the Brotherhood, and if this had been correct for tax purposes, it would not have been necessary to report the per diem and mileage allowances as part of his gross income. It is quite probable that petitioner did not think that the per diem and mileage allowances were covered by a question asking "Did you receive an expense allowance or reimbursement, *29 or charge expenses to your employer?" In any event, we do not believe that the answer to such a question determines that there was negligence or intentional disregard of the rules and regulations. We hold that petitioner's belief that the per diem and mileage allowances were not taxable was justifiable under the particular facts and circumstances of this case and the 5-percent penalty additions cannot be upheld. Pullman, Inc., 8 T.C. 292, 299 (1947); cf. L. L. Moorman, 26 T.C. 666 (1956). To allow calculation of the necessary adjustments to the deficiency in accordance with our determinations, Decision will be entered underrule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
1. The amount of per diem for St. Louis in the foregoing table is a resulting figure after considering the total per diem for the year and the exact amounts of per diem received at other locations.↩
2. Sec. 1.162-17 Reporting and substantiation of certain business expenses of employees. (a) Introductory. The purpose of the regulations in this section is to provide rules for the reporting of information on income tax returns by taxpayers who pay or incur ordinary and necessary business expenses in connection with the performance of services as an employee and to furnish guidance as to the type of records which will be useful in compiling such information and in its substantiation, if required. The rules prescribed in this section do not apply to expenses paid or incurred for incidentals, such as office supplies for the employer or local transportation in connection with an errand. Employees incurring such incidental expenses are not required to provide substantiation for such amounts. The term "ordinary and necessary business expenses" means only those expenses which are ordinary and necessary in the conduct of the taxpayer's business and are directly attributable to such business. The term does not include nondeductible personal, living or family expenses. (b) Expenses for which the employee is required to account to his employer - (1) Reimbursements equal to expenses. The employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer and which are charged directly or indirectly to the employer (for example, through credit cards) or for which the employee is paid through advances, reimbursements, or otherwise, provided the total amount of such advances, reimbursements, and charges is equal to such expenses. In such a case the taxpayer need only state in his return that the total of amounts charged directly or indirectly to his employer through credit cards or otherwise and received from the employer as advances or reimbursements did not exceed the ordinary and necessary business expenses paid or incurred by the employee.↩